May it please the Court. My name is Saul Huerta and I represent Delcia Arqueta-Ramos. Your Honor, first, I do not want to waive the issue that the collective advisement in this case, and this was the first thing that was argued, we don't want to waive that issue, but I do understand that under Escamilla Rojas and that panel, that panel held that the collective advisement was proper under Rule 11. And so I do not want to waive that issue, but I won't want to point out that under Escamilla Rojas, they did find that when there is a large delay between that collective advisement and when the person is actually asked about whether or not they understood that advice, that that can be a violation of Rule 11. And as it happened in Escamilla Rojas, and as it happened, excuse me, and as it happened in Aguilar Vera, that also happened in this case. Well, we don't know how much time though, right? We do not know, Your Honor. But you said she was in the eighth small group. Right. And so what happened is in between the original advisement and Ms. Arqueta Ramos being asked about it, 35 individuals went through a change of plea proceeding and were found guilty, and 35 individuals went through a sentencing phase and were sentenced by the court. Now, obviously, it's not the same as a standard change of plea sentencing hearing that you would see, which would probably each take 30 minutes or so, but I just wanted to be able to do a change of plea and sentencing in two minutes. We're still talking about 70 minutes that would have elapsed. What is it you're not arguing? Something about the group advice all these times? Right. Escamilla Rojas As such, you mean? Right. As a violation in and of itself of the personal address language of Rule 11. As to the original advisements, but you're also arguing with regard to the smaller group five-person. Correct. I'm arguing, based on Escamilla Rojas, I cannot argue that the advisements should have been contemporaneous, basically at the same time as the court verifying it. But I am arguing that, again, under Escamilla Rojas, that because there was that large delay between the original advisement and then being called up as five, you know, in a group of five to find out whether or not you understood them, that that delay is the basis for the Rule 11 violation. And you're also arguing that with respect to the rights waiver, that they had to – that there had to be a one-on-one discussion with her. That's correct, Your Honor. That's a different argument. Right. And that's not precluded by any case? I'm sorry? That's not precluded by any of the case law? I do not believe so, Your Honor. The – I mean, Escamilla Rojas says it's okay to do this group. It basically indicated that you could do this because in Escamilla Rojas, the groups that were called up, I think, were seven or eight individuals at the time. So there was no holding of that, but, you know, factually, I guess, you could say that they found that it was okay for them to do that. You know, the magistrate judge had difficulty with this, and I'm still having difficulty listening to you. What exactly are you saying was wrong? You apparently are not raising the fact that the elements of the offense were never explained. You said that's fine. She's – she told the magistrate judge that's good enough. We don't care about that, basically. So they never told the elements of the offense. But you're not raising that. So what precisely is your objection? Be very precise. Okay. It's not the group advisable, you said. It may be a little – some time delay, but you don't know how much delay that was. So what precisely is your complaint? And again, you know, relying on Escamilla Rojas, the complaint or the violation of Rule 11 is that delay. Like I said, Escamilla Rojas does not allow me to argue that the advisal should have been contemporaneous with the court verifying that she understood those rights. And it's only the delay that you're talking about. But you don't know how long that delay was. Is that correct? That's correct, Your Honor. All right. So I still don't understand, then, the answer to my question. Escamilla Rojas didn't – you observed that the facts were that there were seven or eight people in the group that was pulled out. But it wasn't challenged. The question of the inquiries into whether she actually understood her rights and was waiving them wasn't actually discussed in Escamilla Rojas. Is that right or wrong? I'm sorry, Your Honor. Could you repeat? Is that right or wrong? I couldn't hear the part before that. I still don't understand whether you are arguing only about the delay or whether you are also arguing that there is, with regard to the period that the five people were pulled out and she was interrogated as one of those five people but not individually and face-to-face, whether that's a separate problem. I can't understand  Okay. No, Your Honor. I'm just referring to the delay, not to her being called out in that group of five people because And you're not arguing that because you never argued it? Well, I didn't argue it partially because she was actually spoken to separately in that group of five. Basically, she was just called up and then the judge did speak to her one-on-one to verify that she understood her rights. She didn't ask the five of them whether or not they understood if she went one-by-one through each individual person. Is that the practice they follow nowadays? Depending on the judge, Your Honor, the groups are from five to eight people and depending on, some judges do actually call them up and give them the advices separately, give the advice and then verify that they understand. One judge does that. The majority do not. They do the big advisal and then they call them up in groups. Some groups come up much quicker so that When the small groups come up, does the magistrate judge address each one of the five by their, Ms. Smith or Ms. Arquette? Normally, yes, Your Honor. It would, it, it, normally most of the time Did you hear the advisement? Do you, did you understand the advisement? Do you have any questions? Do they ask, do they proceed in that fashion? Yes, they do. And then In this case? Well, it looks In this case, you're saying that those questions were asked one, one-by-one or asked of all five? They were asked one-by-one Well, it doesn't look like that in the transcript. That's why, that's what's very confusing about what you're saying. Maybe I'm confused about that, Your Honor. I thought it He asked, do each of you understand your right to a court trial? Interpreter, all answer yes. Do each of you understand the maximum penalties? Interpreter, all answer yes. But you're telling us that that wasn't all in general. They answered separately? I'm sorry, Your Honor. If I, if I, I thought it, I thought she had asked individually. I think I, I'm mistaken as to, as to that. I'm curious if that's what they're doing nowadays as a result of our case law. Well, Your Honor, it does change from case to case and the, or I'm sorry, from judge to judge. And the, the bigger concern here is that in these cases, in, in this Arqueta Ramos, for example, making sure that the court is making sure that the individual actually understands, that the court is sure that the, that the Your concern is that because there was a delay, it's not, there's some question about whether or not she understood her rights? Right. And that's something that it's really hard to be able to ascertain when you're, when you have big delays between the advice law rights and the court verifying that they understood those rights in a courtroom with 70 individuals. And so that's But in the group of five, was counsel there with her? Counsel is behind the individual. Behind the individual. Standing up in, in a courtroom a little bit bigger than this one. I, I'm, I'm really, I remain baffled because I understood your argument in your brief to be that the judge's speech is to be person to person and that means one on one. And now you're saying that, that first you said, well, that's what happened here, but now we just saw that isn't what happened here. So And I'm sorry, Your Honor, I did misspeak. So you, I'm sorry, what? I, I did misspeak. So that is a problem. So what are you arguing? That the court is supposed to advise them and verify that they understood the rights personally, meaning one to one, instead of in a group. Either the advice law, which is at the beginning of this hearing, or when they're called up to the front, that, that should also be done individually. When she, when the, when the judge verifies that, in fact, the person understands those rights. You know, you're almost out of time. Do you want to say a minute about harmlessness? Do you want to say anything about harmlessness? Your Honor, just briefly, I think under the, under the other cases, I think the, Mr. Arreta-Ramos' case can be differentiated from Aguilar-Vera and also from Escamilla-Rojas. In Aguilar-Vera, the, the court found, excuse me, the court found that the individual had actually withdrawn their request for an individual court hearing, an individual change of plea hearing. So they had withdrawn their, their, their desire to have one. And in Escamilla-Rojas, the experience counsel, I believe the language that was actually used was superior counsel. And none of that can be found in this transcript. Well, there's no indication here that she would have pled guilty had the rights been, had the rights been determined in a different way, or the waiver. That's correct, Your Honor. I'd like to reserve the, the amount of time I have left. Thank you. Good morning. May it please the Court. I'm Wilbert Rocker. I'm a special assistant United States attorney out of the District of Arizona. In this case, there was no proper preservation of the objection. There was no Rule 11 error. And there wasn't I thought there was a repeated preservation of the objection. I feel like both of you are hearing a different case. I beg your pardon, Your Honor? I thought there was a repeated preservation of the objection. I thought she was repeatedly saying that, that this was improper and she was not, didn't want to go along with it. Your Honor, that is true. At, at, at the very beginning of the proceeding, defense counsel did make the objection on the record. Am I supposed to keep saying it over and over again? Well, Your Honor, our position is that it was an implied waiver with the sense that he allowed his, his client to proceed with the change of plea hearing. He should have walked out? He could have requested a continuance or even set the matter for trial if defense counsel had wanted to. Well, he didn't want to set it for trial. He wanted a proper plea hearing. I beg your pardon, Your Honor? He didn't necessarily want to set it for trial. He wanted a proper plea hearing, which is what she said at the beginning. That is correct, Your Honor. All right. This seems like a non-starter. Let's go on. Defense counsel did, in fact, give his approval to the judge's change of plea hearing on the record. He, when he was inquired as to whether defense counsel wanted the court to accept his client's change of plea, he did answer. Well, yes, because he wasn't going to get any other form of change of plea hearing, but it, and he wanted, but that's different from saying that he was agreeing to the format. That's correct, Your Honor. All right. So let's go on. Okay. Initially, he made the objection under Rule 11 and requested an individual hearing. When the opportunity came to make the objection, defense counsel conceded to the court that, five times, that there was nothing that the court did improper. It was the proceeding as a whole. Everything the court said to his client was proper and that the proceeding is what he was having an issue with, the general advisement. Therefore, we found the ---- And I take it you agree he waived any claim that the court never explained the elements of the offense. I beg your pardon, Your Honor. I take it you agree that he waived, you're saying he waived the claim the court never  That is correct, Your Honor. Which may not go to the plea hearing itself. It might be a Liatin v. Harmlessness question. That would be correct, Your Honor. All right. With respect to the Rule 11 advisement, this Court has ruled both in Escamilla-Rojas and in Aguilar-Vera that it's not so much the en masse advisal of the rights. It's more the questioning by the All right. So what about the questioning? Here you had, what, five people and you were reading before the way it went, which was not a one-on-one conversation. It was, you know, do any of you or do all of you understand X? And then they all said something. I gather they all said yes en masse or something. Is there any case law about whether that's proper as opposed to going to each person and saying, you know, Ms. So-and-so, do you waive your right to trial? Your Honor, I don't believe that there is anything that is specifically on point. Okay. I would say that Escamilla-Rojas and Aguilar-Vera kind of touched on that issue in the sense that they did not find any error with that typo. Because nobody seemed to be litigating it. And even though it took a while to get this out of your opponent, it appears that he, I read as brief as challenging it, but he seems to have forgotten that. That will be corrected. It's not specifically challenging either of those two cases. Okay. Specifically. And the argument, as I understand it, is that personally means personally, one-on-one, at least as to the actual waivers. Yes, Your Honor. That is, I think, what defense counsel is arguing in that respect. And the reason you don't think that's true is? I believe that even in Roblero-Solis and Escamilla-Rojas, the court did go into the definition of personally, where it does not have to be specifically a one-on-one interaction. Well, as to the advisements. But that is, listening is one thing and actual making a waiver is another thing, no? That is correct, Your Honor. I think that with the ability of the court, as the magistrate stated, to call them up in smaller groups because she could see and hear their reaction and the interpreter could see and hear their reaction, addresses the issue of the personally aspect of the waiver of the rights, Your Honor. And suppose we thought you were wrong about that. Do you want to go into the harmless error argument? I'm sorry, Your Honor. The harmless error issue. I'm sorry. I have a bit of a cold, so I'm having a hard time talking up. It could go to the harmless error aspect of it. The position is that even if the court were to find errors under Rule 11, the Rule 11 advisal or the waiver of the rights, that any error still would be harmless because there is nothing in the record that would indicate she would have pled differently. But isn't that your burden? That's correct, Your Honor. And there is nothing in the record to show. But isn't it your burden, the government's burden, if there was in fact a constitutional problem to demonstrate that she wouldn't have? That's correct. So how are you demonstrating it? By examining the record. And looking at a vacuum. I'm sorry. And the fact that there's a vacuum. You're saying the fact that there's no affirmative indication that she wouldn't have therefore means that she wouldn't have. That is correct, Your Honor. She had multiple opportunities to state that she did not want to go forward, to state that she had any type of objection to the way the proceeding was going forward. Defense counsel did as well and all answered in the affirmative that they wanted the proceeding to go forward. In fact, that she did understand her rights to a trial. She wished to waive those rights. Defense counsel asked the court to accept his client's plea. And defense counsel even stated on the record that he felt this client was competent to proceed and knew the rights that she was given up and that she wished to go forward. Has the practice changed at all in the arraignments? Since this case, Your Honor? Well, not since this case. Well, I guess maybe since this case or since our published opinions. Yes, Your Honor. It has. As defense counsel did note, there are ‑‑ it changes depending upon the magistrate judge that is doing the proceeding. But some magistrate judges will address each defendant individually. That is correct, Your Honor. And it appears that that's what happened in Escamilla Rojas, actually, according to the facts. It says right here that after the general address, the magistrate judge called the defendants individually to the front of the courtroom. There, each defendant was asked individually whether he understood the information that had earlier been conveyed. Is that incorrect? I believe that is correct, Your Honor. All right. So this is not ‑‑ so that's not an example of an instance in which this was accepted, even sub salentio? Yes, Your Honor. I believe that would be correct. All right. Is there any ‑‑ you said there was some other case. I believe Aguilar-Vera. There was ‑‑ Yeah, but how could you tell just, you know, we're not inaccurate about what was in the cases. Okay. You think Aguilar-Vera is the case? In Aguilar-Vera, I do believe that there was more of an individualized questioning along the lines of Escamilla Rojas as well. In this case, Your Honor, I do think that with respect to the defendant in this case, the court did go through a litany of questions. Do the defendants understand the maximum penalties? Are they being forced or threatened to plead guilty? In that respect, they did all answer in a smaller collective group of five. He answered collectively, yes. That is correct, Your Honor. But as the magistrate did point out, she did that so that ‑‑ because she was able to see and hear the responses as well as the interpreter was able to see and hear the response. The magistrate judge did individually ask each defendant how they pled and did get an individualized response in that respect, Your Honor. Okay. Any further questions? Okay. May I be excused? Have a seat. You have 30 seconds, so you don't have to use it. Your Honor, just briefly, just speaking about the process, it does change from judge to judge as the court had mentioned. I did want to point out a couple of things. That's part of the reason that I think it would behoove the court to do something more than what was done in Escamilla Rojas. In Escamilla Rojas, in the opinion, they tried to give some guidance and a footnote. Depending on the judge, you get either something like this case where you have five individuals being brought down after the advisement and spoken to at the same time, and others, 10 people are brought up and each of them is asked individually in a row. So I would ‑‑ if the court is going to rule against Mr. Gateramos, I would still request the court give some guidance.  Thank you. May I be excused, Your Honor? Thank you. The matter is submitted. We appreciate your arguments.
judges: Fernandez, Paez, Berzon